LAW OFFICES OF

# JEFFREY LICHTMAN

11 EAST 44TH STREET

SUITE 501

NEW YORK, NEW YORK 10017

www.jeffreylichtman.com

JEFFREY LICHTMAN

JEFFREY EINHORN

JASON GOLDMAN

PH: (212) 581-1001

FX: (212) 581-4999

July 20, 2021

**BY ECF**
Hon. Sidney H. Stein
United States District Judge
500 Pearl Street
New York, New York 10007

Re: United States v. Cheedie, 19 CR 833 (SHS)

Dear Judge Stein:

## A. INTRODUCTION

This letter is submitted on behalf of defendant Derrek Larkin in advance of his August 2, 2021 sentencing. With this letter, the defendant respectfully requests a sentence which is "sufficient, but not greater than necessary to comply with the purposes" set forth in 18 U.S.C. § 3553(a)(2) due, in part, to the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The basis for this request is as follows: *first*, Mr. Larkin has unconditionally accepted responsibility for his criminal conduct, with counsel being instructed to immediately negotiate a guilty plea upon being retained in this case; *second*, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ and *third* a review of the defendant's life finds that there are many good deeds and the prospects for his rehabilitation are very good.

## B. THE DEFENDANT'S GUILTY PLEA
## AND RESULTING GUIDELINES RANGE

On January 21, 2021, Derrek Larkin pleaded guilty pursuant to a plea agreement to Count One of a two-count Indictment which charged him with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349. See January 8, 2021 Plea Agreement at p. 1. Mr. Larkin faces no mandatory minimum and a maximum sentence of 30 years imprisonment. Id.

JEFFREY LICHTMAN

Hon. Sidney H. Stein
United States District Judge
July 20, 2021
Page 2

As recounted in the Plea Agreement, pursuant to U.S.S.G. §§ 2X1.1(a) and 2B1.1(a)(1), the base offense level is seven. Id. at p. 2. With a loss greater than $1.5M, but less than $3.5M, 16 levels are then added. Id. at p. 2; U.S.S.G. § 2B1.1(b)(1)(I). Four levels are added as five or more victims of the offense suffered financial hardship, and two levels are added due to the defendant's obstructive behavior with regard to the deletion of electronic data. Plea Agreement at p. 2. With three levels subtracted for acceptance of responsibility (U.S.S.G. § 3E1.1), the total offense level becomes 26, carrying an advisory sentencing range in the Criminal History Category VI of 120-150 months imprisonment.[1] Plea Agreement at pp. 2-3.

Probation calculated the defendant's total offense level to be 29,[2] withholding the three-level reduction for acceptance of responsibility because Mr. Larkin has also received an enhancement for obstruction of justice. PSR at ¶ 45. As addressed in the following section, Mr. Larkin is deserving of the three-level reduction regardless of this enhancement.

## C.    OBJECTIONS TO THE PSR

The defendant filed objections to the PSR with the Department of Probation on March 30, 2021. The government did not file any objections and the following remain unresolved.

PSR at ¶ 22: As Mr. Larkin allocuted during his change of plea hearing, the defendant's participation in the charged scheme began in 2016 when he started working with Olive Branch Marketing in Clifton, New Jersey and not in December 2015 as reported in the PSR. Despite Probation's response to our objection that it is "relying on the information provided by the Government" with regard to the timing of the defendant's participation in the offense, the government approved Mr. Larkin's proposed guilty plea allocution – including the language concerning the 2016 start date. PSR at p. 32.

---

[1] The stipulated guidelines in the plea agreement of 92-115 months imprisonment were based on a total adjusted offense level of 26 and a Criminal History Category of IV, however, the plea agreement failed to assign Mr. Larkin three points for his 2005 conviction for possession of a weapon in Bergen County, New Jersey, which results in a Criminal History Category of VI. Plea Agreement at pp. 2-3

[2] Despite determining that Mr. Larkin had a total offense level of 29 (and not 26) and a Criminal History Category of VI, resulting in Guidelines of 151-188 months imprisonment, Probation recommended a variance to 92 months based on his personal history and characteristics. PSR at p. 36. This is the bottom of the Guidelines range stipulated between the defendant and the government in Mr. Larkin's plea agreement and reflects a 40% variance from the bottom of the range calculated by Probation.

JEFFREY LICHTMAN

Hon. Sidney H. Stein
United States District Judge
July 20, 2021
Page 3

PSR at ¶¶ 43, 109 & pp. 32-33: Probation has withheld the three-level reduction for acceptance of responsibility for Mr. Larkin because he received a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1, resulting in Probation's calculation of a total offense level of 29 and not 26. Probation's take that he cannot receive both the enhancement and the reduction is simply incorrect. The Second Circuit has held on multiple occasions that it is "appropriate" to apply both the enhancement and the reduction where "a defendant initially obstructs the investigation and later accepts responsibility." United States v. Thompson, 164 F.3d 620, 1998 WL 712454 (Table), at *2 (2d Cir. 1998); see also United States v. Enriquez, 42 F.3d 769, 772-73 (2d Cir. 1994) ("certain cases ... mak[e] it appropriate for the court to assess both the enhancement and the reduction"). The Second Circuit has further observed that the "most obvious example" of a defendant receiving both the enhancement and the reduction is where he "may have engaged in conduct constituting an obstruction for which a penalty enhancement is appropriate, but subsequently come[s] to accept responsibility fully-for the obstruction as well as the crime of conviction." Enriquez, 42 F.3d at 772-73 (emphasis supplied).

Such is the case here. Mr. Larkin's two-level enhancement for obstruction of justice results from his involvement in the remote deletion of electronic data which occurred during the investigatory phase of this case – before he was arrested. Therefore, unlike cases where the Second Circuit has affirmed a district court's decision to withhold the three-level reduction for acceptance of responsibility, none of the defendant's obstructive conduct occurred after his arrest – and certainly not after his guilty plea. See, e.g., United States v. Ray, 713 F. App'x 20, 22 (2d Cir. 2017) (defendant claimed that he was innocent of fraud charges *after* pleading guilty); United States v. Lawani, 588 F. App'x 62, 64 (2d Cir. 2014) (defendant committed perjury *after* he pleaded guilty); United States v. Green, 453 F. App'x 96, 98 (2d Cir. 2011) (defendant falsely attempted to mitigate his culpability in his sentencing statement to the Court).

Probation's response to Mr. Larkin's objection – that "the fact the obstruction occurred prior to his plea is not relevant," simply neglects this voluminous precedent (PSR at p. 33) and their assertion that he has made no "post-arrest ... expression of ... acceptance of responsibility," ignores his guilty plea allocution wherein he specifically acknowledged that what he did was wrong and illegal. PSR at ¶ 109. Accordingly, both the enhancement for obstruction of justice and the reduction for acceptance of responsibility should apply, resulting in a total offense level of 26.

JEFFREY LICHTMAN

Hon. Sidney H. Stein
United States District Judge
July 20, 2021
Page 4

**D.     THE DEFENDANT'S BACKGROUND
AND THE NATURE OF THE OFFENSE –
APPLICATION OF § 3553(a) FACTORS**

Since the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the Sentencing Guidelines have been rendered advisory in nature, leaving sentences to the district court's discretion, guided by the Guidelines and the other factors contained within 18 U.S.C. § 3553(a) and bounded by any applicable statutory minimum and maximum.  This Section directs sentencing courts to "impose a sentence" that is "sufficient, but not greater than necessary, to comply with" the "need for the sentence ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant ...."  18 U.S.C. §3553(a)(1)-(2) (emphasis supplied).  In making this determination, courts are to consider "the nature and circumstances of the offense and the history and characteristics of the defendant ...."  18 U.S.C. § 3553(a)(1).  Accordingly, we offer the following for the Court's consideration.

### The Nature and Circumstances of the Offense

From 2016 through 2019, Derrek Larkin worked for telemarketing companies and aided his superiors in perpetrating a host of frauds involving business opportunity schemes.  While he is in no way deserving of a minimal role adjustment and without detracting from his responsibility for the part that he played in this conspiracy, the defendant was no leader or manager and made little money for his efforts, as opposed to many of his co-defendants, including Anthony Cheedie, Joseph Ciaccio and Joseph Minetto.  Indeed, while Mr. Larkin's sentencing guidelines utilize a $1.5M to $3.5M loss figure (PSR ¶ 29), he profited little from his crimes – he worked on commission, earning less than $150k for his participation during these years.  See PSR at ¶ 92 (reporting that he made only $25k during his employment by Alliance Education in 2017 and 2018).  Further, unlike co-defendants Cameron Brewster, Kevin Handren, Chad Allen and Shane Hanna, Mr. Larkin did not run sales floors at these fraudulent marketing companies (PSR at ¶ 18), instead, he was employed by Ciaccio and Minetto as a salesperson, who "began [a] sales pitch before passing the [v]ictims off to a 'closer' who completed the sale."  PSR at ¶ 21.  If a sale was completed, he would receive a commission.

Despite his lack of leadership, Mr. Larkin admittedly made his situation much worse in January 2019 when, following the execution of a search warrant at one of Ciaccio's and Minetto's telemarketing floors, he and his wife, Mattie Cirilo, discussed and ultimately succeeded in remotely deleting data from Cirilo's seized laptop and cellphone.  While certainly a terrible decision, Mr. Larkin is also appropriately punished under the sentencing guidelines for this additional criminal conduct – resulting in the aforementioned two-level enhancement.  PSR at ¶ 42.

JEFFREY LICHTMAN

Hon. Sidney H. Stein
United States District Judge
July 20, 2021
Page 5

### The History and Characteristics of the Defendant

We have attached nearly 30 character letters in support of this submission, reflecting the significant and meaningful role that Mr. Larkin has played in the lives of friends, family members and recipients of his good deeds and charity. It would be impossible to include a letter from every individual whom Mr. Larkin has positively influenced,[3] still, the myriad letters on which we do remark paint a consistent picture of a "great father ... husband and friend," (Letter of Kyle Folb, attached as Exhibit 1) who is "nurturing[] and always thinking of others before himself." January 26, 2021 Letter of Denise Igdalov, attached as Exhibit 2; see also Letter of Dan Miller, attached as Exhibit 3 ("kind, loving [and] generous"); Letter of Nikolay Igdalov, attached as Exhibit 4 ("focused on becoming the good father that wasn't there for him"). Sadly, were it not for this sentencing, many of Mr. Larkin's exceptionally good deeds probably would have gone unrecognized.



---

[3] Additional character letters are collected and attached to the end of this submission as Exhibit 30.

JEFFREY LICHTMAN

Hon. Sidney H. Stein
United States District Judge
July 20, 2021
Page 6



## JEFFREY LICHTMAN

Hon. Sidney H. Stein
United States District Judge
July 20, 2021
Page 7

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬ It was around his time when Mr. Larkin's more serious contacts with the criminal justice system began – and without any familial support, he slid downhill quickly. He violated the restraining order and stole a snow blower from his mother's house, resulting in his arrest, and eventually a sentence of 18 months imprisonment after he violated his probation. PSR at ¶ 48. In 2002, he admitted to stealing a weedwhacker, tools and bicycles while he was homeless, which he sold to a pawn shop in New Jersey. PSR at ¶ 49. Then in 2004, Mr. Larkin was convicted of possessing a weapon (a stun gun) and approximately $10,000 worth of ecstacy, marijuana and cocaine – and in 2006, he was convicted of assaulting an individual at a party whom he mistakenly believed had fought with a friend. PSR at ¶¶ 50-51. Finally, in 2007, Mr. Larkin was convicted in the Northern District of Virginia of possessing with the intent to distribute cocaine – law enforcement seized 800 grams of the narcotic from his vehicle – and he was sentenced to 70 months incarceration.

### A Family Man

Mr. Larkin's horrible childhood and poor early relationship with his parents at least caused one positive: with all his faults, he has become a truly incredible father, the kind of father he wished he had growing up. Many friends and family members have taken note of his efforts – and nearly every character letter submitted on behalf of Mr. Larkin touched on his dedication to his children, TL and DL. See, e.g., Ltr. of Dan Miller, Ex. 3 ("Derrek became a father before me and quickly became a good example of what I wanted to [become] ... as a dad"); Letter of Eric Simmons, attached as Exhibit 12 ("spends the majority of his time at home with his wife and two children").



JEFFREY LICHTMAN

Hon. Sidney H. Stein
United States District Judge
July 20, 2021
Page 8

Michael Cornell writes that he has "personally seen Derrek grow ... as a father," adding that he "was there for every practice and every game" for TL's youth football.  Letter of Michael Cornell, attached as Exhibit 18.  Donald Wallace echoes: "Derrek is an amazing father and husband who spends most of his time with his wife and two kids. ... His oldest son loves sports and Derrek is at every practice and game genuinely happy to be there."  Letter of Donald Wallace, attached as Exhibit 19; see also Letter of Andrew Montano, attached as Exhibit 20 ("loves his wife and two boys more than anything in this world").  Similarly, Theresa Apgar writes of her experiences observing the defendant: "He ... enrolled his oldest son in football and baseball and devotes his free time playing with his boys and helping his older son improve his skills.  He is a very hands on dad and I have seen his boys drop whatever they are doing, no matter how involved they may be, screaming 'Daddy's home' as they run to him."  Ltr. of Theresa Apgar, Ex. 10; see also January 25, 2021 Letter of Denise Dreyer, attached as Exhibit 21 ("great father and loving husband who enjoys spending time with his family").

Mr. Larkin's step-father, Wayne Dreyer, also heaped praise on his dedication to his children in his letter to the Court:

> Derrek has always been extremely tight with his children which
> have made a gentleman out of him.  His soft spot for his sons is
> obvious to all and he does whatever he can do for them.  The most
> recent memory is watching him in church seeing his son [TL] get
> baptized and then seeing them together at the table in the restaurant
> afterwards.  He was a proud dad that day as he is every day. On
> weekends he tries to do something the kids enjoy whenever he's
> off work.  He appreciates seeing them smile and enjoys watching
> them grow up.  Last year his older son registered for baseball and
> football, both times were very limited due to covid atmosphere, but
> they made the best of it and the experience was there for his son,
> and the satisfaction was evident in Derrek, seeing his son do what
> Derrek did at his own earlier years. *These are just a few recent*
> *memories we all saw Derrek as a great Dad and doing what he*
> *loves.* He is an ambitious person and wants to live his life with his
> family and that's all that matters to him.

January 21, 2021 Letter of Wayne Dreyer, attached as Exhibit 22 (emphasis supplied).

Despite their difficult relationship when the defendant was younger, Mr. Larkin's father similarly hails:

JEFFREY LICHTMAN

Hon. Sidney H. Stein
United States District Judge
July 20, 2021
Page 9

> Over the past seven plus years, I've seen Derrek mature into a
> responsible husband and father.  His first priority is his family.  I
> have seen Derrek's interactions with his sons and am amazed at the
> young man he has become.  He is nurturing and involved in the
> boys' activities.  At their young ages (7 and 4), he is patient in
> helping with school work, spending time reading with them, and
> teaching them.  He is encouraging his oldest son as he is starting to
> become interested in sports activities.

Ltr. of Steve Larkin, Ex. 9; see also Ltr. of Frances D'Amico, Ex. 11 ("devotes all his time to
being with his family when he is not working").  Mr. Larkin's uncle, Ronald Brancato, confirms
this take, adding that when his family comes over to his house for dinner and social gatherings,
he "admire[s] how attentive Derrek is with his children by playing with them in the pool,
teaching them how to swim, and just making fond memories together."  Letter of Ronald
Brancato, attached as Exhibit 23.

Finally, Mr. Larkin's wife, Mattie Cirilo, perhaps best summarizes the defendant's
dedication to his children:

> The most important thing to Derrek is being a dad.  He is not the
> type of dad who ever needs a break, he is constantly wanting to be
> with and do things with his kids.  He teaches them everything and
> they love playing with him – they are always so excited to have
> "boy time" which is where they get to pick any activity they want,
> just them and Dad.  Right now, he is teaching our almost 5 year old
> to ride his bike with the training wheels off.  He also strictly
> prefers story time with his dad because he does all the fun voices
> and sound effects. ██████████████████████████████
> ████████████████████████████████████████████████
> ████████████████████████████████████████████████
> ███████████████████ Derrek spends full days teaching him the rules
> and skills of his favorite sports. Derrek will keep playing until the
> kids get tired and be genuinely happy the whole time.

Ltr. of Mattie Cirilo, Ex. 13. █████████████████████████████████
████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

JEFFREY LICHTMAN

Hon. Sidney H. Stein
United States District Judge
July 20, 2021
Page 10



A Dedicated and Reliable Friend

In addition to lauding his commitment to his children, nearly every letter submitted on behalf of Mr. Larkin recalled his acts of kindness, where he went out of his way to assist a friend or relative. See, e.g., Ltr. of Dan Miller, Ex. 3 ("What stands out most about him is that he is always there to help anyone in need"); Ltr. of Donald Wallace, Ex. 19 ("he has been the first person there for me when I needed someone"). To begin, Kyle Folb recounts his experiences with the defendant's kindness and generosity in his letter to the Court:

> My son's mother left me and both my sons who were babies .... I had a dead end job and was not talking with my parents or my family. Derrek helped me by giving me a place to stay with my two boys. After it was no longer realistic for us to stay, he rented me a hotel for 6 months in Oakland, NJ called the Ramapo Motor Lodge. He paid for me and my 2 sons to live there for 6 months to make sure we were safe and had a roof over our head.

Ltr. of Kyle Folb, Ex. 1 (emphasis supplied); see also Ltr. of John Adams, Ex. 17 ("the kind of person you could always count on and he would be there for you no matter what").

Nikolay Igdalov also writes of his reliance on Mr. Larkin in his time of need:

> Six years ago my life was an absolute mess, I was struggling with addiction and ended up homeless with nowhere to turn, but Derrek took me in and helped me when many people wrote me off. In 2015 with his help I went into treatment and have been sober ever since. Today I am a married man, I am finishing a masters program in May, and going into medical school in the Fall. I am

JEFFREY LICHTMAN

Hon. Sidney H. Stein
United States District Judge
July 20, 2021
Page 11

> convinced if it wasn't for his help I would be dead, but instead I get
> to have an amazing life today because a good friend did not give up
> on me.

Ltr. of Nikolay Igdalov, Ex. 4 (emphasis supplied); see also Ltr. of Eric Simmons, Ex. 12 ("a genuinely decent person who goes out of his way for others"). Shaun Wilking echoes this high praise, writing that when he was injured in 2019 and needed hip surgery, Mr. Larkin "was one of [his] only friends who came and visited," and while he was "laid up" Mr. Larkin assisted his fiancé with "small things around the house because [he] was on crutches," and "even helped shovel [snow]." Ltr. of Shaun Wilkin, Ex. 15 ("His selflessness is unwaver[ing]").

In his letter to the Court, Lou Strippoli describes an incident from when he was young which reflects Mr. Larkin's strong dedication to friends in need:

> In my late teens, I had an argument with my parents. They did not
> kick me out of the house, but I did not want to stay at home
> because I was so upset. I wanted a place to stay for a day or two to
> clear my head. I called Mr. Larkin and he let me stay for a few
> days at his home. He said, "stay here as long as you need to." I
> was very thankful for his hospitality and concern. He would talk
> with me about the argument and give his best advice. He also
> provided food for me. Me feeling guilty and feeling like an
> inconvenience, I asked him if I could buy us dinner one night. He
> denied the offer and said, "you got a lot on your mind and we have
> plenty of food here." His kindness and sensitivity to my situation
> is something I'll remember and appreciate forever.

Letter of Lou Strippoli, attached as Exhibit 24 (emphasis supplied).

Describing the defendant as "a great friend [who] would drop everything in an instant to come help me," Andrew Montano writes that when he was moving, Mr. Larkin was "one of my only friends [who] helped me out," and that he was "the first one to arrive and the last one to leave." Ltr. of Andrew Montano, Ex. 20. Adam Schwartz echoes that Mr. Larkin "has no problem waking up earl[y] to help a friend move and no problem going to bed late to make sure everyone is ok." Letter of Adam Schwartz, attached as Exhibit 25.

Dan Miller recalls in his letter when Mr. Larkin assisted him after his mother became sick:

> A little over a year ago my mother was diagnosed with stage 3
> breast cancer. Derrek was quick to offer condolences and made me

JEFFREY LICHTMAN

Hon. Sidney H. Stein
United States District Judge
July 20, 2021
Page 12

> feel at peace through kind words and actions.  He frequently called
> me to ask how I was doing and most importantly how my mother
> was doing.  He was aware of my mother's financial circumstances
> and along with contributing himself, offered to raise money for her.

Ltr. of Dan Miller, Ex. 3.  Donald Wallace had a similar experience with Mr. Larkin after his
father had a stroke:

> I went through a very hard time when my father had a stroke and
> suddenly needed 24 hour care.  My father and I were very close.  I
> don't know how I would have gotten through this without Derrek.
> He was the first person at the hospital seeing what I needed and
> called to check in daily.  He went with me to visit my father several
> times because it was very hard for me.  I would call him to vent or
> even cry because I knew he would always stop what he was doing
> to take my call and never judge.  When my father had to be moved
> into a hospice facility, at last minute's notice, Derrek immediately
> took a day off of work to help me move him in. When my father
> passed away, I called Derrek and he was at my house the next day
> to support me.  I am now selling the house I shared with my father
> and the first thing Derrek told me with no hesitation was that if I
> needed a place to stay in the meantime his door was always open.
> The reason I will always be there for Derrek is because since I have
> met him he has always selflessly been there for me.

Ltr. of Donald Wallace, Ex. 19.

Ryan Mulholland echoes that when his grandfather passed away from complications
related to COVID-19, the defendant was "continuously" there for him.  Letter of Ryan
Mulholland, attached as Exhibit 26.  And Theresa Apgar writes that when she had "emergency
surgery" in 2019, Mr. Larkin was "one of the first to call ... when [she] was released from the
hospital to see if [she] needed anything."  Ltr. of Theresa Apgar, Ex. 10.

Charitable Acts

In addition to his kindness and friendship, many of the submitted letters also touched on
Mr. Larkin's charity, and in particular, his dedication to rescuing and fostering dogs.  See, e.g.,
Ltr. of Ronald Brancato, Ex. 23 ("open[s] up [his] home to these dogs until they are able to find a
safe and caring home for them"); Ltr. of Theresa Apgar, Ex. 10 ("a love for animals ... and has
opened his home to rescue dogs .... until a suitable home can be found").

JEFFREY LICHTMAN

Hon. Sidney H. Stein
United States District Judge
July 20, 2021
Page 13

Christina Chavis, who is the director of Animal Rescue "R" Us, elaborates on Mr. Larkin's and his wife's dedication to her charitable organization:

> Our relationship began when they adopted a dog from our rescue organization in 2015. Since that time, they have continuously proven that they are responsible, caring, and nurturing pet owners. Their dog, Riley, is not only well-behaved, but she is a trained service animal.
>
> Post-adoption, Mattie and Derrek stayed in contact and continued to support the organization. They eventually opened their home to other dogs in need by becoming active fosters within the group. The time, kindness, and compassion that they have put into each and every one of their foster dogs has been insurmountable. With their help, we have been able find their fosters safe and loving homes.

February 18, 2021 Letter of Christina Chavis, attached as Exhibit 27; see also Letter of Christine Aletras, Ex. 14 ("give[s] back by being a member of animal rescue shelters ... foster[ing] dogs"); Ltr. of Steve Larkin, Ex. 9 ("caring nature has proven to be helpful in handling these vulnerable animals").

Beyond rescuing and fostering animals, others took note of instances where the defendant went out of his way to help others that he did not even know. Eric Simmons writes of one such encounter in his letter to the Court:

> Derrek has also impressed me with his willingness to help others who aren't friends or family. Derek and I started lifting together once a week about three years ago (somewhere close to that amount of time, at least). A few months after we started, I stopped by his house without having eaten dinner. My blood sugar quickly dropped and I asked if we could pause our workout for me to run to a nearby Walgreens and grab a protein drink. On the way back, we drove by a homeless man who was going through a garbage can for food. Derrek turned back into the parking lot to make a U-turn, went all the way back around, pulled up to the man and pulled out two twenty dollar bills. He gave them to me and instructed me to give them to the homeless man so that he could buy himself a "nice dinner." I'm a pretty charitable guy. But the way he did this has

JEFFREY LICHTMAN

Hon. Sidney H. Stein
United States District Judge
July 20, 2021
Page 14

> always stuck with me as an exceptionally good deed.  Experiences
> like this have shaped my perception of Derrek and are the
> motivations for me to write this letter ....

Ltr. of Eric Simmons, Ex. 12 (emphasis supplied).

#### Starting Fresh with an Honest Job

Given Mr. Larkin's criminal history, finding employment has been a consistent challenge in his life.  Following his arrest in this case, however, Mr. Larkin began working in construction and is on his way to becoming a member of the Ironworker's Union – a feat which has garnered high praise in the attached letters.  See Ltr. of Theresa Apgar, Ex. 10 ("Derrek is currently employed as an iron worker which is extremely physical work"); Ltr. of Steve Larkin, Ex. 9 ("working steadily over the past eight months trying to earn his union book in the Ironworker's Union").

Eddie Guy, who owns and operates North Jersey Rebar explains: "Derrek was referred to our company by a family friend.  I agreed to meet [him] in May of 2020 for an interview.  We hired him right away.  He has proven to be reliable, hardworking and conscientious.  He has earned trust and respect from his supervisors and coworkers ...."  Letter of Eddie Guy, attached as Exhibit 28; see also January 29, 2021 Letter of John Guy, attached as Exhibit 29 ("Derrek has been an asset to the company and extremely respectful to his fellow employees").  Shaun Wilking echoes this praise: "All the feedback I get from my coworkers is how good of a worker he is and how he is going to make it far in the trade."  Ltr. of Shaun Wilking, Ex. 15; Ltr. of Ronald Brancato, Ex. 23 ("adjusted to this honest work life and is now in a good routine and doing well with his job").

JEFFREY LICHTMAN

Hon. Sidney H. Stein
United States District Judge
July 20, 2021
Page 15

### E.    CONCLUSION

Defendant Derrek Larkin comes before this Court asking for mercy.  A difficult life filled with good deeds has been marred by his criminal actions.  Nevertheless, as the powerful enclosed letters reveal, Mr. Larkin is a decent and giving man who unlike many defendants has made extraordinary efforts to help friends, family, and even strangers throughout his life, when no one was watching, when he had no need to impress a judge deciding his fate.  For these reasons and the others stated herein, a lenient sentence is respectfully requested.

Respectfully submitted,

Jeffrey Lichtman
Jeffrey Einhorn

cc:    Kiersten Fletcher, Esq.
       Benet Kearney, Esq.
       Robert Sobelman, Esq.
       Assistant United States Attorneys (by ECF)